# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER JOHN VENABLE, | CASE NO. 3:25-CV-00483-JJH |
| Plaintiff, | JUDGE JEFFREY J. HELMICK |
| | UNITED STATES DISTRICT JUDGE |
| v. | |
| | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | CARMEN E. HENDERSON |
| Defendant, | **REPORT & RECOMMENDATION** |

## I. Introduction

Plaintiff, Christopher John Venable ("Venable" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On November 14, 2022, Venable filed an application for DIB and on November 18, 2022, he filed an application for SSI, both alleging a disability onset date of April 4, 2022. (ECF No. 7, PageID #: 46). The applications were denied initially and upon reconsideration, and Venable requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On March 20, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial

1

vocational expert testified. (*See id.* at PageID #: 64-84). On May 6, 2024, the ALJ issued a written decision finding Venable was not disabled. (*See id.* at PageID #: 46-58). The ALJ's decision became final on January 24, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 29-31).

On March 11, 2025, Venable filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 8, 10). Venable asserts the following assignments of error:

> (1) The ALJ erred when he failed to properly apply the criteria of Social Security Ruling 96-8p and consider all Plaintiff's impairments and related limitations when forming the residual functional capacity evaluation.
>
> (2) The ALJ erred when he failed to support his conclusions or discuss supportability and consistency when he evaluated the opinions of the treating, examining, and reviewing sources.
>
> (3) The ALJ erred at Step Three of the Sequential Evaluation when he failed to find that Plaintiff satisfied the criteria of Listing 11.02.

(ECF No. 8 at 1).

## III. Background

### A. Relevant Evidence

Throughout his decision, the ALJ summarized the relevant evidence, including Venable's disability allegations and the medical records:

> The claimant's last generalized tonic-clonic seizure happened in November 2018, per the claimant's Neurologists. There was a reported tonic-clonic seizure in June 2023, that occurred in the setting of missed anti-epileptic drugs. Furthermore, the claimant's psychiatric history and significant stress raises suspicion for concurrent psychogenic nonepileptic seizures given the multiple unremarkable EEGs and imaging (Exhibits B-5F/5, B17F/11). During a 69-hour ambulatory EEG in November 2022, the claimant marked an aura that had no abnormal EEG correlate

2

(Exhibit B-6F/11). During another continuous video EEG in February 2023, there was one pushbutton event of less than 30 seconds with no clear EEG background change with the event (Exhibit B-11F/14). Additionally, medication non-compliance has been a concern (Exhibits B-6F/42, B-13F/7). The claimant does not take his medication when he drinks (Exhibit B-3F/13) which he occasionally does per his father (Exhibit B-2F/6). He has missed doses when sleeping (Exhibit B-13F/15).

…

The claimant attended an intake assessment at Firelands Regional Medical Center in January 2023. He reported feeling sad, empty, and hopeless, after experiencing a lot of losses (sister, great grandparent, grandfather had passed away) and losing independence from not being able to drive. He presented with psychomotor retardation, feeling like a burden on his family with whom he lived and who were supporting him until he gets SSDI. He reported suicidal thoughts with a plan and admitted to owning weapons. He reported feeling dread and irritable, with fatigue and muscle tension, and was easily distracted. He presented with a depressed mood, a flat affect, and some short-term memory impairment. Intake diagnoses were major depressive disorder single episode moderate and generalized anxiety disorder (Exhibit B-10F/2). He admitted to financial stress, difficulties at home with his stepfather's temper, drinking wine using marijuana less than once per month. He initiated medication reviews at Firelands and received case management services (Exhibits 11F/12, 16) through May 2023 (Exhibit 14F).

Consultative examiner Sudhir Dubey, PsyD, interviewed the claimant in February 2023 for a psychological assessment in connection with this application. The claimant reported a history of seizures since childhood, arthritis of the left ankle, depression, and anxiety since 2014 when his seizures restarted, and anger issues since childhood. He lived with his mother, stepfather, and uncle. The death of his sister in 2016 contributed to his depression, as did financial issues. Sleep improved to seven or eight hours with medication. Anxiety symptoms of increased heart rate and thoughts occurred two to three days per week with no specific trigger. He was seeing a psychiatrist and a counselor every two weeks. He reported alcohol use between the ages of 16 and 22, when he drank six beers and two or three shots about three times per week, but he quit on his own. He had an IEP from first through eleventh grade, but graduated high school with overall grades of As and Bs. He received tutoring and modified testing. He had

many friends in school and got along with others and with teaches [sic]. The claimant quit working because of seizures in April 2022, after being a carpenter for ten months. He was independent in activities of daily living, shopping, managing money, caring for pets, taking medications, maintaining a schedule, and doing paperwork. He enjoyed working on cars, listening to music, watching television, spending time with his family, walking, exercising, and church. Eye contact was appropriate, posture, gait and speech, unremarkable. He was calm and stable, did not need words explained/defined or directions/questions repeated. Based on performance, math skills were in the average range, general fund of knowledge too and the ability to abstract was appropriate. While cognitive function was estimated to be within the average range, he demonstrated cognitive issues in being able to do two digits backwards and not recalling three items after a five-minute delay. Dr. Dubey offered diagnoses of alcohol use disorder moderate in sustained remission, depressive disorder not otherwise specified and unspecified neurocognitive disorder.

The claimant testimony focused on seizure activity and how he is unable to drive because of it. He testified to taking his medications and to no longer attending mental health services due to transportation limitations (hearing testimony).

…

The undersigned carefully considered the claimant's statements concerning their impairments and the effects of these on the ability to perform work activity. He testified to not doing much because of depression and anxiety as well as transportation limitations that has limited attendance to therapy. He also testified to not working primarily due to not knowing when he will have a seizure (hearing testimony). In contrast, the activities reported in early 2023, including shopping, caring for pets, maintaining a schedule, working on cars and trucks, walking, hunting, and fishing, exercising, and going to the YMCA three times per week (Exhibit B-12F/5, B- 2F) involve handling guns, fishing gear, vehicle parts, being in public, while managing time. The wide array of said activities do not support fears of not knowing when a seizure would come on, or the alleged level of fatigue (Exhibit B-3E/2), the frequency of seizures alleged (hearing testimony) or disabling intensity of residual psychologically based symptoms. The claimant testified to having two to three seizures per month, sometime a couple in a day, that require two to three days to recover from (hearing testimony). While the claimant reports aura episodes, his neurologist finds the last seizure was in November

> 2018, followed by a reported tonic-clonic seizure in June 2023, that occurred in the setting of missed anti-epileptic drugs and severe stress (Exhibits B-17F/11).

(ECF No. 7, PageID #: 50-51, 54).

### B. Opinion Evidence at Issue

The ALJ also considered various medical opinions in considering Plaintiff's disability claim. In addition to the opinions of the State agency medical and psychological consultants, the ALJ considered the opinions of Plaintiff's neurology care provider Alexandra McCarthy and consultative examiner Sudhir Dubey. (ECF No. 7, PageID #: 55-56). These opinions and the ALJ's treatment of them are discussed in greater detail in relation to Plaintiff's arguments.

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2027.

2. The claimant has not engaged in substantial gainful activity since April 4, 2022, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: Seizures/temporal lobe epilepsy, fracture of the left orbit, bilateral ankle arthritis and mild degenerative changes /status-post right ankle sprain, anxiety, learning disorder (reading and writing), mild neurocognitive disorder, depression unspecified (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except postural limitations of no climbing of ladders,

5

> ropes, or scaffolds. Frequent climbing of ramps and stairs. Occasional use of the bilateral lower extremities for operation of foot controls. Environmental limitations to avoid all exposure to moving mechanical parts, commercial driving, and high exposed places. Additional environmental limitations to avoid more than occasional, concentrated exposure to extreme cold, and vibrations. Can understand, remember, and carry out simple instructions, orally presented, or by demonstration, explained in advance, for work not requiring a specific production rate, such as assembly line work, nor work requiring hourly quotas. No instructions provided in writing. Capable of using judgement to make simple work-related decisions, with occasional changes in a routine work setting. Occasional interaction with the general public, coworkers, and supervisors
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> …
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 4, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 7, PageID #: 48-50, 53, 56-58).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step

7

five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Venable raises three issues on appeal. Plaintiff first argues the ALJ failed to properly consider all of Plaintiff's impairments and limitations when crafting the RFC. (ECF No. 8 at 1). Next, Plaintiff argues the ALJ failed to properly support his conclusions concerning the medical opinions by addressing the supportability and consistency of the opinions. (*Id.*). Finally, Plaintiff argues the ALJ erred when he found Plaintiff did not meet Listing 11.02. (*Id.*).

#### 1. Consideration of All Impairments

Plaintiff argues "the ALJ failed to consider the totality of the effects related to Plaintiff's continuing seizures, his psychological impairments, and the residual effects of his bilateral ankle arthritis," specifically Plaintiff's report of continuing pain. (ECF No. 8 at 9). Plaintiff summarizes the medical record and asserts that it "supported the fact that Plaintiff had pain issues which interfered with his ability to sustain even his activities of daily living" such that the ALJ's failure to consider Plaintiff's pain was harmful error necessitating remand. (*Id.* at 8-10).

The Commissioner responds that "the ALJ plainly considered all of Plaintiff's impairments, finding all of the impairments cited in Plaintiff's argument to be severe at Step Two and then evaluating them throughout the remainder of the sequential evaluation." (ECF No. 10 at 11) (record citation omitted). The Commissioner argues Plaintiff is simply asking the Court to reweigh the evidence, but such is improper and does not alter the fact that substantial evidence supports the ALJ's decision. (*Id.* at 11-12).

The Commissioner's argument is persuasive. As indicated by the Commissioner, the ALJ's decision makes clear that he considered Plaintiff's seizures, psychological impairments,

8

and bilateral ankle arthritis because the ALJ found each of these impairments to be severe and specifically discussed why he found they warranted the limitations included in Plaintiff's RFC. (*See* ECF No. 7, PageID #: 49, 54). As to Plaintiff's ankle pain, the ALJ explained that such had "diminished claimant's exertional capacity" but there was "no indication of an inability to perform work at the light level of exertion, provided the postural restriction of no climbing of ladders, ropes or scaffolds … as well as slight limitation in climbing ramps and stairs, and only occasional operation of foot controls." (*Id.* at PageID #: 54). The ALJ adopted the more restrictive of the two State agency medical opinions based on Plaintiff's feet and ankle conditions. (*Id.* at PageID #: 55). The records Plaintiff cites regarding his ankle pain—which reflect x-rays showing mild degenerative changes and appointment notes indicating Plaintiff complained of pain, declined surgery, and reported "significant relief with the use of [a] brace" and being "able to walk for exercise and work without increased pain"—support the ALJ's conclusion concerning Plaintiff's abilities. (*See id.* at PageID #: 461, 485-86).

      The ALJ's decision makes clear that he considered all of Plaintiff's impairments and the limitations he found supported by the record in formulating the RFC and substantial evidence supports that conclusion. Plaintiff is essentially asking the Court to reweigh the evidence, but it is not the role of this Court "to reconsider the facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Rather, because substantial evidence supports the Commissioner's decision, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

### 2. Consideration of the Medical Opinions

Plaintiff next challenges the ALJ's consideration of the medical opinions.

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 416.920(e). Under the current regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 416.920c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 416.920c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion but generally is not required to discuss other factors. 20 C.F.R. § 416.920c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1)-(2).

#### a. McCarthy's Opinion

The ALJ explained his consideration of McCarthy's opinion as follows:

> Neurology care provider Alexandra McCarthy, PA-C, offered a medical source statement in October 2022 (Exhibit 5F/1) providing

10

> a description of myoclonus seizures with memory changes, convulsive with alternation of awareness during the episodes. Altered mental status following the event involving confusion, exhaustion, and difficulty concentrating, can last 30 minutes or more, requiring the claimant rest at least 30 minutes after the event. The physician assistant opined that unpredictability results in safety concerns, and that stress can precipitate seizures, but the claimant is capable of low stress work. The undersigned considered the opinion of physician assistant McCarthy as it pertains to safety concerns and to difficulty with stress and has provided environmental and non-exertional restrictions in the assessed residual functional capacity. However, the record establishes that compliance with medications has been of concern and a subject of discussion during appointments. The claimant has admitted to the provider. He misses doses when sleeping (Exhibit B-5F/5, 13F/7), or when drinking (Exhibit B-2F/6), which the opinion did not consider. The need for unscheduled breaks and being absent four days per month, is not supported by the record that reflects a level of activity not consistent with being able to keep a schedule. As such, the opinion of physician assistant McCarthy is mostly persuasive.

(ECF No. 7, PageID #: 55).

Plaintiff argues "the ALJ failed to support his determination that the opinion … was not consistent with the medical records" because while the ALJ noted that Plaintiff would miss doses when drinking, the "[t]he referenced note from an emergency room admission does not reflect anyone stating that he was drinking." (ECF No. 8 at 14). While Plaintiff recognizes that other notes reflect that he would miss doses of his medication, he argues that his levels remained in the therapeutic range. (*Id.*).

The Commissioner responds that the ALJ "correctly observed that nothing in PA-C McCarthy's opinion expressly considered Plaintiff's lack of consistent medication compliance, and the ALJ's consideration of that omission in assessing the persuasiveness of the opinion was reasonable." (ECF No. 10 at 13-14). Additionally, the Commissioner asserts that the ALJ properly relied on Plaintiff's daily activities being inconsistent with the portions of McCarthy's

11

opinion pertaining to absenteeism and a need for unscheduled breaks. (*Id.* at 14).

Plaintiff is correct that the records cited by the ALJ do not reflect a correlation between drinking and missing doses of medication. However, as noted by the ALJ and as Plaintiff appears to concede, Plaintiff admitted to missing doses of his medication throughout the record, although largely attributed to sleep rather than drinking. (*See* ECF No. 7, PageID #: 493, 520, 526, 918, 922, 926). Regardless of the reason Plaintiff missed doses of his medication, it was reasonable for the ALJ to find McCarthy's opinion less than fully persuasive given it did not consider Plaintiff's non-compliance with his medication routine.

Further, the ALJ found McCarthy's opinions concerning the need for unscheduled breaks and absenteeism were not supported by the record, specifically Plaintiff's activities. (ECF No. 7, PageID #: 55). Earlier in the opinion, the ALJ highlighted that in early 2023, Plaintiff's reported activities included "shopping, caring for pets, maintaining a schedule, working on cars and trucks, walking, hunting, and fishing, exercising, and going to the YMCA three times per week" and these activities "involve handling guns, fishing gear, vehicle parts, being in public, while managing time" which did "not support fears of not knowing when a seizure would come on, or the alleged level of fatigue, the frequency of seizures alleged or disabling intensity of residual psychologically based symptoms." (*Id.* at PageID #: 54; (record cites removed) *see id.* at PageID #: 865, 910).

Considering the ALJ's decision as a whole, the ALJ adequately explained why he found McCarthy's opinions concerning Plaintiff's need for additional breaks and absenteeism unsupported and inconsistent with the record, and substantial evidence supports this decision.

   **b. State Agency and Consultive Examiner Opinions**

In addition to challenging the ALJ's consideration of McCarthy's opinion, Plaintiff

12

makes brief references to Dr. Dubey's opinions and the State agency consultants' opinions, all of which the ALJ found persuasive or somewhat persuasive, and argues that "although the ALJ found that these reports from the treating, examining, and reviewing examiners were at least partially persuasive, he failed to include the totality of the opined limitations in the RFC." (*Id.* at 14-15). Without specific citations, Plaintiff asserts that "[t]hese omitted limitations included the fact that Plaintiff would have an altered mental status for 30 minutes after a seizure and that he could perform simple instructions, such as one-step processes, was able to maintain attention and concentration for simple tasks but not multi-step tasks independently, and he may have some difficulty in dealing with work pressure." (*Id.* at 15).

The Commissioner responds that the RFC fully accounts for the limitations assessed by the State agency. (ECF No. 10 at 15). To the extent Plaintiff "references a purported opinion that [he] would have an altered mental status for 30 minutes after a seizure," the Commissioner argues such is "not a medical opinion because it is not a statement about what the claimant can still do despite his impairment and whether he has one or more impairment-related limitations or restrictions." (*Id.*). Finally, the Commissioner argues that Plaintiff's allegation that the ALJ failed to consider the supportability and consistency of the State agency and consultative examiner is not developed and the ALJ's decision indicates he considered the appropriate factors. (*Id.* at 15-16).

It is unclear which aspect of the ALJ's treatment of these opinions Plaintiff is challenging. To the extent Plaintiff argues the opinions included limitations for "altered mental status for 30 minutes after a seizure," such was only mentioned in McCarthy's opinion and was discounted by the ALJ based on Plaintiff's reported activities as discussed above. (ECF No. 7, PageID #: 489-90). Neither the State agency nor Dr. Dubey's opinion contained similar

13

observations or limitations. (*Id.* at PageID #: 89-118, 908-14). Regarding Plaintiff's argument that "he could perform simple instructions, such as one-step processes, was able to maintain attention and concentration for simple tasks but not multi-step tasks independently, and he may have some difficulty in dealing with work pressure," Plaintiff fails to articulate how the RFC is inconsistent with or fails to account for these limitations. The ALJ's RFC indicated Plaintiff could "understand, remember, and carry out simple instructions, orally presented, or by demonstration, explained in advance, for work not requiring a specific production rate, such as assembly line work, nor work requiring hourly quotas," and further limited him to "using judgment to make simple work-related decisions, with occasional changes in a routine work setting." (*Id.* at PageID #: 53). Thus, contrary to Plaintiff's argument, the ALJ largely adopted the limitations from the persuasive opinions and adequately explained his reasoning for not including additional limitations. Plaintiff's second argument is without merit.

### 3. Listing 11.02

Finally, Plaintiff challenges the ALJ's conclusion that he did not meet Listing 11.02. (ECF No. 8 at 17).

At step three, an ALJ considers whether a claimant's impairment is severe enough to prevent them from completing gainful activity. 20 C.F.R. § 404.1525. If an impairment meets or equals a "Listing of Impairments," they are presumed disabled. *Id.*; *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 710 (6th Cir. 2013) ("A claimant who meets or equals a listed impairment is presumptively disabled, without consideration of her age, education, or work experience."). To meet a listing, the claimant "must satisfy all of the [listing's] criteria." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment."

*Id.* If the ALJ's listing finding is supported by substantial evidence, based on the record as a whole, the Court will defer to the ALJ's finding, "[e]ven if the record could support an opposite conclusion." *Id.* at *4. Moreover, if the ALJ's listing finding is not supported by substantial evidence, the error is harmless if the claimant cannot show that her impairments met or medically equaled a listing. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

Listing 11.02 addresses epilepsy. Under the listings, epilepsy is defined as "a pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical activity in the brain." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00(H)(1). Listing 11.02 provides:

> Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
>
> A. Generalized tonic-clonic seizures ((see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>
> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>
> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>
>   1. Physical functioning (see 11.00G3a); or
>
>   2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>
>   3. Interacting with others (see 11.00G3b(ii)); or
>
>   4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>
>   5. Adapting or managing oneself (see 11.00G3b(iv)); or

> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>
>    1. Physical functioning (see 11.00G3a); or
>
>    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>
>    3. Interacting with others (see 11.00G3b(ii)); or
>
>    4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>
>    5. Adapting or managing oneself (see 11.00G3b(iv)).

*Id.* at § 11.02. The phrase "despite adherence to prescribed treatment" means that the claimant takes medication or follows other treatment procedures for his neurological disorder as prescribed by a physician for three consecutive months, but the impairment continues to meet the other listing requirements despite treatment. *Id.* at 11.00(C).

Here, the ALJ explained his consideration of whether Plaintiff's seizures met a listing:

> The claimant's impairments fail to meet the requirements of medical listing 11.02A (Generalized tonic-clonic seizures) as argued by the claimant's representative during the hearing (hearing record), for lack of generalized tonic-clonic seizures occurring despite adherence to prescribed treatment at least once per month for three consecutive months, or once every two months with a marked limitation in one of the areas of the B criteria, or, dyscognitive seizures occurring despite adherence to prescribed treatment at least once a week for at least three consecutive months, or once every two weeks for at least three consecutive months with a marked limitation in one of the areas of the B criteria. The claimant's last generalized tonic-clonic seizure happened in November 2018, per the claimant's Neurologists. There was a reported tonic-clonic seizure in June 2023, that occurred in the setting of missed anti-epileptic drugs. Furthermore, the claimant's psychiatric history and significant stress raises suspicion for concurrent psychogenic non-epileptic seizures given the multiple unremarkable EEGs and imaging (Exhibits B-5F/5, B-17F/11). During a 69-hour ambulatory EEG in November 2022,

16

> the claimant marked an aura that had no abnormal EEG correlate (Exhibit B-6F/11). During another continuous video EEG in February 2023, there was one pushbutton event of less than 30 seconds with no clear EEG background change with the event (Exhibit B-11F/14). Additionally, medication non-compliance has been a concern (Exhibits B-6F/42, B-13F/7). The claimant does not take his medication when he drinks (Exhibit B-3F/13) which he occasionally does per his father (Exhibit B-2F/6). He has missed doses when sleeping (Exhibit B-13F/15).

(ECF No. 7, PageID #: 50).

Plaintiff argues the ALJ erred in finding that he did not meet the criteria of Listing 11.02 because the "evidence established that Plaintiff had the requisite number of seizures documented by his treating neurologist and hospital records." (ECF No. 8 at 17). Specifically, Plaintiff argues "the treating neurology physician's assistant noted that the seizures were occurring on a regular and consistent basis of at least once per week for the requisite three months" such that Plaintiff meets Listing 11.02B. (*Id.* at 19). The Commissioner responds that "the record does not document Plaintiff experiencing at least one dyscognitive seizure per week for at least three consecutive months despite adherence to prescribed treatment" as required under the relevant Listing and even Plaintiff "relies, in part, on [his] testimony that he experienced seizures two to three times per month, not weekly." (ECF No. 10 at 18).

Plaintiff has failed to carry his burden of establishing that he meets the criteria of Listing 11.02(B). Importantly, to satisfy this Listing, Plaintiff must establish that he suffered dyscognitive seizures at least once per week for at least three consecutive months despite adherence to prescribed treatment. 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02(B). Plaintiff cites to records indicating he suffered seizures in February 2022, June 2022, October 2022, June 2023, and October 2023. (*See* ECF No. 7, PageID #: 421, 432, 493, 918, 1009). These records fall short of establishing *weekly* seizures for three *consecutive* months as required. To the extent

17

Plaintiff relies on a single report in October 2022 that he was "still experiencing" seizures weekly, even if this statement is excepted as true, it does not establish when the weekly seizures started or how long they continued such that it is insufficient to satisfy the requirements. Further, even if the Court were willing to accept this record as sufficient support that Plaintiff experienced the requisite weekly seizures for three consecutive months, Plaintiff still cannot show that he meets the listing because this record confirms that he was not fully compliant with his medications. (*Id.* at PageID 493 (noting that Plaintiff "missed doses due to sleeping"). Thus, he cannot show that his seizures occurred despite adherence to prescribed treatment.

Because Plaintiff cannot show that he satisfies all the requirements of Listing 11.02(B), any error in the ALJ's step three analysis is harmless. *See Forrest*, 591 F. App'x at 366. Plaintiff's third argument is without merit.

**VI. Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Venable's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: November 10, 2025

                                             s/ *Carmen E. Henderson*
                                             CARMEN E. HENDERSON
                                             U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).